
J. Edward Kerley (175695)
Dylan L. Schaffer (153612)
Nicholas J. Peterson (287902)
**Kerley Schaffer LLP**
1939 Harrison Street #900
Oakland, California 94612
Telephone: (510) 379-5801

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WILLIAM TONG,** et al, <br><br> Plaintiffs, <br><br> v. <br><br> **STATE FARM GENERAL INSURANCE COMPANY,** an Illinois corporation, and **DOES 1 through 10**, <br><br> Defendants. | Case No. 2:24−cv−02219−DSF−MAR <br><br> **DISCOVERY MATTER** <br><br> **PLAINTIFFS' OPPOSITION TO STATE FARM'S EX PARTE APPLICATION FOR ORDER STRIKING SUPPLEMENTAL DECLARATION OF COUNSEL IN SUPPORT OF ENFORCEMENT MOTION** <br><br> Discovery Cutoff: 5/12/25 <br> Pre-Trial Conference: 9/8/25 <br> Trial: 10/7/25 |

State Farm's ex parte application is framed as a motion to strike the Supplemental Declaration of Dylan Schaffer filed in support of the pending Motion for Enforcement (Dkt. 59-1). But it actually contains *two* independent requests for the Court's orders.

First, omitting citation to caselaw that is directly contrary to its argument, State Farm argues the Supplemental Declaration should be stricken because it was filed in violation of the Local Rules. The authorities omitted from State Farm's motion, along with the unique circumstances here, justify the Court's consideration of the Supplemental Declaration and two accompanying exhibits, which are partial amended responses to discovery requests at issue in the prior motion proceeding.

Altogether independent of its request that the Court strike the Supplemental Declaration, State Farm seeks the Court's sealing order because, it argues, the declaration contains proprietary and confidential information. State Farm concedes the declaration does *not* run afoul of the Court's protective order by including partial *titles* of Operation Guides (OG).

But State Farm nevertheless seeks the sealing order, arguing that partially listing *several* such titles threatens State Farm's proprietary interests. Its argument depends solely on the sworn assertions of a State Farm employee. But the employee seems not to be aware that State Farm has *routinely* placed both the *titles* of the OGs at issue, and most the documents themselves, into the public record.

Likewise, the employee seems to be unaware that State Farm has historically done very little to guard against revelation of these documents, so much so that State Farm stood by silently while one of the documents at issue here was entered into superior court and court of appeal files, was relied on by both sides in briefing in both courts, and is *quoted* in a published opinion by the California Court of Appeal. State Farm cannot logically argue a sealing order is justified.

The Court should deny the ex parte application.

## I. The Court May Consider the Supplemental Declaration of Counsel and Accompanying Exhibits, which Here are Limited to State Farm's Partially Amended Discovery Responses.

State Farm's foundational premise here is that under the Local Rules 37-2.2, and 83-2.5, this Court *may not* consider the Tongs' Supplemental Declaration and accompanying exhibits in deciding the pending Motion for Enforcement. It informs the Court repeatedly that the Local Rules *bar* such consideration. (Dkt. 63, pp.2:8-11, 4:5-12, 6:8-24).

Usually when a litigant urges a legal contention on a Court, and especially in the hurried context of an ex parte application, the party can be expected to assist the Court by sharing the relevant authorities. Inexplicably, State Farm has filed its ex parte application, and asserted its *absolute bar* contention, without, apparently, looking for—let alone *briefing*—the relevant law. Pursuant to Federal Rule of Civil Procedure 11(b)(2), counsel's signature on the ex parte application is a certification that its "legal contention[] [is] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law …." But it is not.

In fact, judges in this District routinely consider such supplemental declarations and accompanying exhibits.[1] Also, there is some debate among those

---

[1] *Wren v. Transamerica Life Ins. Co.*, 2024 WL 5317297, at *3 (C.D. Cal., 2024) [finding no basis to strike supplemental declaration]; *Vargas v. United States*, 2024 WL 5275635, at *1 (C.D. Cal., 2024) [filed and accepted]; *Cameron, v. City of El Segundo*, 2021 WL 3466324, at *6 (C.D. Cal., 2021) [rejecting motion to strike supplemental declaration and exhibits]; *Fleming v. Unum Life Ins. Co. of Am.*, 2018 WL 6521498, *1 (C.D. Cal. Sept. 21, 2018) [accepting supplemental declaration and exhibits]; *Sprengel v. Mohr*, 2012 WL 12885115, at *2, n.3 [denying motion to strike]; *Grasshopper House, LLC v. Renaissance Recovery Servs., LLC*, 2011 WL 13214102, at *1 n.3 (C.D. Cal. Mar. 30, 2011) [accepting supplemental declaration and exhibits].

judges on the issue.[2] But the extensive law State Farm omitted from its ex parte application makes plain: (a) contrary to Defendant's contention, this Court *may* consider the evidence; and (b) the Court may exercise its discretion *not* to do so.

But the *absolute* bar urged by State Farm is abjectly *not* supported by existing law. And as Defendant neither cites nor discusses that law, it cannot logically argue here its unsupported legal contention is warranted by a nonfrivolous argument for extending, modifying, or reversing existing law.

Finally, as is set forth below, there is strong reason for the Court to exercise its discretion to consider the Supplemental Declaration and accompanying exhibits. Specifically, State Farm relies heavily in its opposition to the Enforcement Motion on amended responses and productions that occurred after Plaintiffs could meaningfully respond. But at the same time, *the carrier omitted from its pleading and supporting declaration in the motion proceeding the amended responses themselves, and any detailed description of the contents of its recent production*. Plaintiffs' Supplemental Declaration and two accompanying exhibits were filed to cure State Farm's omissions.

## II. The Court Should Exercise its Discretion to Consider the Declaration.[3]

Pursuant to the Local Rules, Plaintiffs served their Motion for Enforcement (Dkt. 55) on counsel for State Farm on Monday, February 17, 2025. On the afternoon of Friday, February 21, 2025, State Farm served some amended discovery requests and produced thousands of pages of documents purportedly in partial compliance with this Court's December 2024 order compelling discovery.

State Farm delivered its portion of the Joint Stipulation relating to the

---

[2] *Cameron,* 2021 WL 3466324, at *6 [acknowledging that "decisions are split as to the propriety of submitting/considering additional declarations with a supplemental memorandum."]

[3] The procedural facts set forth below are supported by the accompanying Declaration of Dylan Schaffer ISO Plaintiffs' Opposition to the Ex Parte Application (Schaffer Decl. ISO Ex Parte Oppo.), ¶¶22-32.

4

enforcement motion, and supporting declarations, late on Monday, February 24, 2025. In its portions of the Joint Stipulation, State Farm relied heavily on its *February 21st responses and production*. (Dkt. 55-1, pp.25:11-29:17, 46:1-50:3).

But State Farm omitted from its portions of the Joint Stipulation any detailed *description* of the *contents* of its production. It also did not attach the partially-amended discovery responses themselves to its supporting declaration. Instead, State Farm simply *argued* that having served some amended responses and produced thousands of pages on February 21, 2025, it had satisfied the Court's order. (Dkt. 55-1, pp.25:11-29:17, 46:1-50:3).

Plaintiffs' Enforcement Motion was due to be filed on February 25, 2025. Plaintiffs had received State Farm's Joint Stipulation portions and supporting evidence the day before. So they could not review the partially amended responses and thousands of pages of produced documents, rework their portion of the Joint Stipulation and supporting declaration, re-serve the motion on State Farm, wait for State Farm's responsive modifications to its papers, and timely file the motion.

Plaintiffs therefore addressed State Farm's compliance arguments in their Supplemental Memorandum. (Dkt. 59). But because State Farm's portion of the Joint Stipulation and supporting declarations failed to attach its amended responses and omitted a detailed description of the *contents* of produced documents, Plaintiffs submitted a supporting declaration of counsel which sought to cure those omissions. (Dkt. 59-1) Specifically, the Supplemental Declaration:

- attaches State Farm's amended responses as exhibits;
- states in detail the chronology of State Farm's responses and productions as relates to each of the categories of productions ordered by the Court;
- describes in detail the contents of State Farm's recent productions; and
- identifies with specificity the many items ordered produced by the

5

Court that State Farm has left unaddressed.

The Tongs submitted a similarly detailed Supplemental Declaration in support of their Supplemental Memorandum in the motion to compel proceeding (Dkt. 45-1); State Farm did not object.

Now, State Farm asks the Court on the one hand to accept its arguments in opposition to the Enforcement Motion that its months tardy amended responses and production, delivered only after State Farm was served with the Enforcement Motion, satisfy the Court's December order, while on the other hand omitting from its pleadings and supporting declarations the amended responses themselves, and a description of the production. That was strategic: as the Supplemental Declaration and Memorandum detail, State Farm produced *thousands* of pages of guidelines non-responsive to the Court's order or the document requests at issue on topics like Colorado law, boating claims, and child custody disputes.

State Farm had every opportunity to make its arguments in the Enforcement Motion and to support those arguments with evidence. Instead, State Farm engaged in a classic sandbag—it waited until the Friday afternoon before Plaintiffs' motion was due to serve the responses and produce the documents, served its portions of the Joint Stipulation and supporting declarations the following Monday, relied heavily on its Friday amended responses and production for its opposition to the Enforcement Motion, but in doing so omitted the responses and details of the production from its argument and evidence.

Upon reviewing State Farm's responses and production, the Tongs concluded State Farm's compliance argument is a sham; the responses and production seem to have been designed to avoid this Court's authority. But it was incumbent upon the Tongs to support that argument, which appears in their Supplemental Memorandum, *with evidence.* The Supplemental Declaration at issue here, and the accompanying exhibits, *are that evidence*. The Court should consider both in its resolution of the enforcement motion.

### III. The Court Should Reject State Farm's Ex Parte Application to Seal the Declaration.

In addition to its baseless assertion that the Court is barred from considering the Supplemental Declaration, separately, State Farm seeks the Court's order sealing the Supplemental Declaration because, the carrier argues, it contains proprietary and/or confidential information. State Farm's argument is that the Supplemental Declaration should be sealed because it (a) contains a *list* of partial OG titles (although the carrier admits identifying individual titles does not offend the protective order), and (b) that the Declaration reveals "private terms of employment agreements with its personnel." (Dkt. 63, p.7:8-10). State Farm has no evidence to support its ex parte application. The Court should deny it.

#### A. State Farm's Own Conduct Over Many Years Makes Plain the Operation Guides Themselves, Let Alone Partial Titles Identified in the Declaration, are Not Confidential.

As for the OGs, State Farm identifies the offending paragraph of the Supplemental Declaration as Docket 59-1, p.3:1-22. In that paragraph counsel listed portions of titles of twenty-nine[4] Operation Guides that were the only documents produced between the Court's December order and several days after the Tongs served their Enforcement Motion.[5] The titles are in most cases not complete; instead, they show the initial production was mostly non-responsive to the Court's December order. The Declaration reveals nothing whatsoever about the contents of any of the OGs.

State Farm admits that "disclosing the name of an individual confidential internal guideline or procedure document may not in and of itself constitute a violation of the Protective Order …." (Dkt. 63, pp.7:27-8:1) The Tongs agree.

---

[4] State Farm says there are *thirty,* but it has OG 71-46 listed twice in its supporting declaration.

[5] Schaffer Decl. ISO Ex Parte Oppo., ¶¶3-5.

7

But State Farm urges "disclosure of the *extensive list* of such materials contained in the Schaffer Declaration does. That is because public disclosure of that compilation may place State Farm at a competitive disadvantage by divulging confidential and proprietary information relating to State Farm's internal operations, practices and procedures." (Dkt. 63, pp.7:27-8:1, citing Dkt. 63-2, Tierney Declaration, pp.3:7-4:10)

State Farm's application is unavailing because (a) it lacks evidentiary support for its "collective identification" argument and, far more importantly, (b) State Farm has routinely placed both the titles of the OGs at issue here, and most of OGs themselves, in the public record, and done nothing to protect its supposedly proprietary information when it is released to the public.

First, Mr. Tierney's assertions lack foundation. He describes himself as a "claims specialist" but provides no description of his role or responsibilities. He indicates he is familiar with the OG series at issue, but that is likely to be true of thousands of present and former State Farm employees. Mr. Tierney does not claim any familiarity with State Farm's creation of, dissemination of, or, most importantly, State Farm's efforts to keep confidential, the OGs at issue.

In keeping with the lack of foundation, Mr. Tierney informs the Court: "The 70 Series OGs are based upon years of proprietary analysis and decision-making, internal information, feedback from its vendors, claims-handling experience, and business knowledge." (Dkt. 63-2, Tierney Declaration, p.3:15-17) But he provides no experiential basis or other foundation for those assertions.

Mr. Tierney alerts the Court that, contrary to State Farm's admission, "even the names of the specific Operation Guides within the 70 Series OGs were compiled and disseminated, State Farm could face competitive harm, as competitors could gain insight into how State Farm manages its claims operations." (Dkt. 63-2, Tierney Declaration, p.3:15-17)

But again, the assertion lacks foundation. For a Court to emergently seal

8

documents, it should have a concrete evidentiary basis to do so, not vague and conclusionary assertions of an employee whose familiarity with the relevant issues is unproven. Indeed, even if foundation had been properly established, the assertions are so vague and conditional as to be meaningless.

Finaly, Mr. Tierney assures the Court that he is "unaware of any litigation wherein State Farm produced confidential or trade secret OGs, including the specific OGs at issue here, without a protective order or a Court-order compelling production." (Dkt. 63-2, Tierney Declaration, p.4:7-10) But he never says *when* he joined State Farm.

The Court therefore has no way to judge whether he has any historical knowledge of the carrier's conduct vis a vis the OGs at issue. If Mr. Tierney joined State Farm last week, his assertion that he knows of no litigation in which State Farm produced the OGs at issue here without obtaining application of a protective order is of little value. And while we have no reason to believe Mr. Tierney's sworn assertion about State Farm's historic care in maintaining the confidentiality of OGs was made in good faith, he is profoundly wrong. Most troubling, the lawyers litigating this case for State Farm, and the carrier itself, *know* Mr. Tierney is wrong.

As is set forth in detail in the accompanying Declaration of Dylan Schaffer, State Farm has routinely produced most of the Operation Guides listed in Mr. Tierney's declaration without seeking application of any protective order.[6] Also, State Farm has readily revealed the *titles* and numbers for other OGs as to which it *has* sought protection of a protective order.[7] Counsel for State Farm here was counsel in the *Fadeeff* matter, in which State Farm produced multiple versions of many of the OGs at issue here without confidentiality protection.[8]

---

[6] Schaffer Decl. ISO Ex Parte Oppo., ¶¶6-9.
[7] Schaffer Decl. ISO Ex Parte Oppo., ¶¶6-9.
[8] Schaffer Decl. ISO Ex Parte Oppo., ¶6.

Plaintiffs' Opposition to State Farm's Ex Parte Application

Take this compelling example: Here, State Farm produced two versions OG 75-20 relating to water losses. It marked the documents "Confidential." OG 75-20 is among the documents Mr. Tierney relies on in his declaration, and as to which he alerts the Court that State Farm *never* produces such documents without protective order protection. But in fact historically State Farm has produced multiple versions of OG 75-20 that are substantively identical to the two OG versions produced here, without any confidentiality protection.[9]

Or consider this example.[10] Here, State Farm applied the confidentiality label to OG 70-94, which relates to its reliance on experts in investigating claims. OG 70-94 is one of the documents relied on by Mr. Tierney in his declaration. In a matter litigated by the same counsel as represent the parties here, State Farm likewise sought application of the protective order by marking the produced version of OG 70-94 "confidential." But its efforts stopped there.

Plaintiffs marked the document at a 2018 deposition without objection or steps by State Farm to avoid its disclosure. The document was part of the summary judgment record, part of the appendix on appeal, is referred to by title in the Court of Appeal's published opinion and is *quoted at some length in that published opinion.*[11] State Farm has taken no steps over seven years to remove the document from the public record, where it remains today.

Therefore, even if inclusion of several partial OG titles in the Supplemental Declaration violated the protective order, which is not only a stretch but seems contrary to the logic of State Farm's admission that stating *one such title* would not amount to breach of its proprietary rights, State Farm has no valid evidence to support its argument for sealing. In fact, its conduct over many years strongly suggests State Farm and its lawyers *know* sealing is unwarranted.

---

[9] Schaffer Decl., ISO Ex Parte Application, ¶¶10-11, Exhibits A-G.
[10] Schaffer Decl., ISO Ex Parte Application, ¶¶12-21.
[11] *See Fadeeff v. State Farm Gen. Ins. Co.*, 50 Cal.App.5th 94, 99, n.2 (2020).

**B.      The Supplemental Declaration Reveals No Confidential Personnel Information.**

State Farm also argues the Supplemental Declaration reveals confidential personnel information, pointing to Docket 59-1, pp.11:24-12:12. (Dkt. 63, p.7:9-10) The paragraphs contain generic descriptions of categories of documents, without revealing any contents. The paragraphs reveal nothing of substance as to either employee. The paragraphs are aimed at identifying what is *missing* from the produced documents, which appears to be essentially anything meaningfully responsive to the Court's order. There is no basis to seal the declaration.

## CONCLUSION

For the reasons set forth, the Court should deny State Farm's ex parte application to strike the Supplemental Declaration of Counsel filed in support of the Enforcement Motion. Likewise, the Court should reject State Farm's separate request that it seal the Supplemental Declaration.

Date: March 16, 2025

/s/Dylan Schaffer
Dylan Schaffer
Counsel for Plaintiffs

Plaintiffs' Opposition to State Farm's Ex Parte Application